UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LINDA ROWLANDS, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:13-CV-59 RLM |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| *Defendant* | ) | |

<u>OPINION AND ORDER</u>

Linda Rowlands brought suit against her former employer, United Parcel Service, under Title VII, the Age Discrimination in Employment Act, and the Americans with Disabilities Act after her employment was terminated in July 2012 and January 2013.[1] She alleges that UPS discriminated and/or retaliated against her based on her sex, age, and/or disability, and that similarly situated non-protected employees were treated more favorably with respect to the enforcement of the company's policies, procedures, and discipline.[2] UPS's motion for summary judgment under Fed. R. Civ. P. 56 pends before the court. For the following reasons, the court GRANTS the motion.

---

[1] Ms. Rowlands's ERISA claim was dismissed in February 2015 [Doc. No. 35].

[2] Ms. Rowlands is pursuing claims of sex, age, and disability discrimination with respect to the July 2012 termination, and disability discrimination and retaliation with respect to the January 2013 discharge. [*See* Doc. No. 32].

# I. Standard of Review

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011). The court construes the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." Marr v. Bank of America, N,A., 662 F.3d 963, 966 (7th Cir. 2011); *see also* Hastings Mut. Ins. Co. v. LaFollette, No. 1:07-cv-1085, 2009 WL 348769, at *2 (S.D. Ind. Feb. 6, 2009) ("It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies.").

## II. BACKGROUND

Linda Rowlands was 50 years old and had worked for UPS at its Fort Wayne facility for some 25 years when her employment as a Quality Control Clerk was terminated for the first time in July 2012 for falsifying her time card in violation of UPS's Honesty in Employment policy. The pertinent part of that policy states:

> We expect honesty from our people in all their duties, including their handling of money, merchandise, and property with which they are entrusted.
>
> We all expect our people to be honest in their assessment of themselves, such as the time and commitment they give to their job performance, the fairness they seek in their dealings with others, or the objectivity they use in evaluating their own contributions.
> ***
> DISHONESTY WILL result in immediate dismissal and possible criminal prosecution.

[Doc. No. 52-6 at 7].

Ms. Rowlands filed a grievance with the union after her termination and the parties agreed to convert it into a suspension without pay. Ms. Rowlands returned to work in September 2012. She was terminated again in January 2013 for violating the company's Crisis Management and Workplace Violence Prevention Policy after a coworker reported she threatened him when she displayed and activated a taser at work. UPS's violence prevention policy provides in pertinent part:

> UPS is committed to a safe working environment, free of threats, intimidation, and physical harm . . . UPS has adopted a policy of zero tolerance with respect to violence in the workplace.

> UPS prohibits violence related conduct, including but not limited to, physical assaults, fighting, threatening comments, intimidation, and the intentional destruction of any company property, employee property, or merchandise. Any comments or behavior that could reasonably be interpreted as an intent to do harm to employees or property will be considered a threat. We also prohibit the possession and/or use of weapons by any employee on UPS property.

[Doc. No. 52-6 at 9].

Ms. Rowlands doesn't dispute that she changed the start date on her time card or that a coworker reported feeling threatened when she brought a taser to work and activated it ten to fifteen feet from him, nor does she dispute the other violations for which she was reprimanded. But she contends UPS treated other similarly situated employees more favorably and the stated reasons for the discipline were pretextual, asserting that UPS really terminated her because she was a 50-year-old woman with a disability for which she had requested accommodation.

III. Analysis

*A. Title VII and ADEA Claims*

Ms. Rowlands alleges that she was suspended in July 2012 because she was a 50 year-old woman, in violation of Title VII and the ADEA, and that UPS's stated reason for suspending her—falsifying her time card and not reporting time correctly—was "a sham to cover up the real reason" for the suspension.

The court of appeals has "tried to move away from the many multifactored tests in employment discrimination cases," and focuses on "whether the evidence

4

would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." <u>Monroe v. Indiana Dep't of Transportation</u>, __ F.3d __, No. 16-1959, 2017 WL 4103750, at *5 (7th Cir. 2017) (internal quotation marks omitted). The "sole question" is "[w]hether a reasonable juror could conclude that [Ms. Rowlands] would have kept [her] job if [she wasn't a 50 year-old woman], and everything else had remained the same." <u>Ortiz v. Werner Enterprises, Inc.</u>, 834 F.3d 760, 764 (7th Cir. 2016).

Ms. Rowlands doesn't deny altering her time records, or disagree that she violated UPS's Honesty in Employment policy. She appears to concede that there is no direct evidence of sex or age discrimination, but contends that she has "a rather large amount" of circumstantial evidence from which a reasonable juror could infer intentional discrimination—specifically evidence that men under 40 were treated better.

In a disciplinary case such as this, in which a Ms. Rowlands "claims that she was disciplined by her employer more harshly than a similarly situated employee based on some prohibited reason, [Ms. Rowlands] must show that she is similarly situated with respect to performance, qualifications, and conduct." <u>Peele v. Country Mut. Ins. Co.</u>, 288 F.3d 319, 330 (7th Cir. 2002) (quoting <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 617 (7th Cir. 2000) overruled on other grounds by <u>Ortiz v. Werner Enterprises, Inc.</u>, 834 F.3d 760 (7th Cir. 2016)). "The similarly situated inquiry is a flexible, common-sense one that asks, at bottom,

whether there are enough common factors to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." <u>Monroe v. Indiana Dep't of Transportation</u>, __ F.3d __, No. 16-1959, 2017 WL 4103750, at *7 (7th Cir. 2017) (quoting <u>Henry v. Jones</u>, 507 F.3d 558, 564 (7th Cir. 2007)).

Ms. Rowlands offers Joe Gropengieser, a substantially younger male, who performed many duties in the quality control department with her, as her nearest comparator. In some ways, Mr. Gropengieser is a good comparator. Both he and Ms. Rowlands worked in the quality control department, although their job descriptions were different, and the evidence suggests that, at least recently, both were supervised by Steve Liskey.

With regard to conduct, Ms. Rowlands notes that shortly after her January 2013 termination, Mr. Gropengieser and Stephen Harms, a union steward at UPS, had a verbal altercation during which Mr. Gropengieser told Mr. Harms they should leave the building to fight. That threat occurred in the presence of UPS management, Mr. Liskey, who warned Mr. Harms and Mr. Gropengieser that he would take them out of service if they didn't end their argument. Mr. Gropengieser wasn't discharged—as was Ms. Rowlands when a coworker reported that she threatened him—despite his apparent violation of UPS's "zero tolerance" violence prevention policy.[3]

---

[3] Ms. Rowlands cites uncontested evidence that Mr. Gropengieser was previously discharged for fighting another UPS employee in a parking lot neighboring the UPS facility and was subsequently reinstated. She doesn't present evidence describing the

UPS doesn't deny Mr. Gropengieser threatened to beat Mr. Harms yet wasn't disciplined. Rather, the company argues that Mr. Gropengieser didn't engage in similar conduct because the basis for Ms. Rowlands's July 2012 suspension was a violation of the Honesty in Employment policy—timecard fraud—not a violation of the violence prevention policy. UPS contends there is no evidence Mr. Gropengieser ever falsified his time card or otherwise violated the Honesty in Employment policy. But the similarly situated inquiry isn't a search for a comparator who engaged in identical conduct; "the critical question is whether they have engaged in conduct of comparable seriousness." Coleman v. Donahoe, 667 F.3d 835, 851 (7th Cir. 2012) (quoting Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't, 510 F.3d 681, 689 (7th Cir. 2007)). UPS doesn't argue that violating the Honesty in Employment policy and an apparent violation the violence prevention policy don't constitute conduct of comparable seriousness and it would seem that threatening to beat a coworker is at least as serious as falsifying a timecard.

That Mr. Gropengieser and Ms. Rowlands engaged in conduct of comparable seriousness doesn't end the court's inquiry. Ms. Rowlands must demonstrate that they "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Monroe v. Indiana Dep't of Transportation, __ F.3d __, No.

---

specific details of his termination, such as the supervisor who terminated him, or when, and under what conditions, he was reinstated.

16-1959, 2017 WL 4103750, at *7 (7th Cir. 2017). To determine whether there are differentiating circumstances that would distinguish UPS's response to their conduct, the court proceeds to consider their performance histories.

This inquiry is complicated by the fact that Ms. Rowlands didn't depose any UPS managers or submit for the record any personnel evaluation or other records that could support her argument that they were similarly situated. The scant evidence available suggests that they weren't similarly situated with respect to performance. Mr. Harms—who largely supported Ms. Rowlands's claims in his deposition—testified that Mr. Gropengieser would have been a better worker than Ms. Rowlands in her job and that she was "a pain in the butt" to Mr. Liskey and "wasn't the best worker in the place by far" because she was "an odd character," "ditzy," and "kind of crazy."

The evidence in the record doesn't allow the court to conclude that Mr. Gropengieser was similarly situated with respect to performance history. Because "[a]n employee who does not have a similar disciplinary history *and* performance record as the plaintiff is not similarly situated," Simpson v. Franciscan All., Inc., 827 F.3d 656, 662 (7th Cir. 2016) (emphasis added), the court can't conclude that Mr. Gropengieser is a valid comparator.

Ms. Rowlands contends that beyond Mr. Gropengieser, "she has many examples of individuals who were treated more favorably," arguing that these other employees engaged in timecard fraud by changing their start times but weren't disciplined. But she didn't cite evidence regarding these employees' job

8

description, performance, qualifications, or conduct to support this contention, so the court can't determine whether they were similarly situated. She also asserted that Heather Jones, a supervisor, and Mr. Harms changed their start times, but weren't terminated. But Ms. Jones wasn't prohibited from making changes because she was a supervisor and Ms. Rowlands didn't cite any evidence to show that Mr. Harms or any other employee altered his or her start time after a UPS policy change prohibited non-management employees from making such alterations.

Ms. Rowlands hasn't identified a similarly situated employee who was treated more favorably, so the court can't find that she has produced "evidence [that] would permit a reasonable factfinder to conclude that . . . [a] proscribed factor caused the discharge." Monroe v. Indiana Dep't of Transportation, __ F.3d __, No. 16-1959, 2017 WL 4103750, at *5 (7th Cir. 2017). Accordingly, the court must grant UPS's summary judgment motion as to Ms. Rowlands's Title VII and the ADEA claims.

## B. ADA Disability Claims

Ms. Rowlands also contends that she was wrongfully discharged in July 2012 and January 2013 because of a disability—a knee injury—or because UPS regarded her as disabled. She also asserts that UPS failed to make reasonable accommodations for her disability.

To prevail on her disability discrimination claim and avoid summary judgment, Ms. Rowlands must show that (1) she is disabled within the meaning of the ADA; (2) she can perform the essential functions of her job, with or without reasonable accommodation; and (3) UPS took an adverse job action against her because of her disability or without making a reasonable accommodation for it. Basden v. Professional Trans., Inc., 714 F.3d 1034 (7th Cir. 2013); Povey v. City of Jeffersonville, Ind., 697 F.3d 619 (7th Cir. 2012); Winsley v. Cook County, 563 F.3d 598, 603 (7th Cir.2009). UPS doesn't dispute that it took an adverse job action against Ms. Rowlands but argues it didn't take an adverse job action because of her alleged disability and contends that she hasn't demonstrated that she is disabled.

The inquiry begins with whether Ms. Rowlands meets the ADA's definition of disabled and so is covered by the Act. The ADA defines disability as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102. "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," 42 U.S.C. § 12102(2). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

"'Substantially limits' is not meant to be a demanding standard," but "not every impairment will constitute a disability within the meaning of th[e ADA]." 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

Ms. Rowlands asserts that her knee injury substantially limited her performance of the major life activities of walking, standing, squatting, knelling, and working both in July 2012 and in January 2013. The court will separately consider Ms. Rowlands's 42 U.S.C. § 12102(1) disability discrimination claims with respect to her July 2012 suspension and her January 2013 termination.

### 1. July 2012 Termination

After falling in April 2012, Ms. Rowlands saw her orthopedist, Dr. Jeffrey Harris. Dr. Harris's report from that visit indicates that Ms. Rowlands complained of "burning and stabbing" right knee pain, which she described as a ten on a scale of one to ten. [Doc. No. 58-5]. An MRI revealed a right medial meniscal tear, and Dr. Harris recommended an arthroscopic partial medial meniscectomy, which was performed after her July 2012 suspension-turned-termination. Dr. Harris authorized her to return to work before surgery, but restricted her to "no stairs/docks/ladders at all."

Ms. Rowlands's meniscal tear, which she said made various major life activities difficult and caused a doctor to restrict her from climbing any stairs, was a substantial limitation on a major life activity and so meets the ADA's definition of a disability. *See* 29 C.F.R. § 1630.2(j)(1)(i), (iii) ("the threshold issue

11

of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis . . . [and] shall be construed broadly in favor of expansive coverage").

Ms. Rowlands was disabled when UPS suspended her in July 2012, so the court turns to whether that suspension was discriminatory. To demonstrate disability discrimination, Ms. Rowlands must "show that . . . her employer would not have fired [her] but for [her] actual or perceived disability; proof of mixed motives will not suffice." <u>Serwatka v. Rockwell Automation, Inc.</u>, 591 F.3d 957, 962 (7th Cir. 2010). *See also* <u>Monroe v. Indiana Dep't of Transportation</u>, __ F.3d __, No. 16-1959, 2017 WL 4103750, at *5 (7th Cir. 2017) (employing the "but for" causation standard despite the ADA Amendments Act changing the language of the Act). Ms. Rowlands can make such a showing using either direct or circumstantial evidence. *See* <u>Id.</u> Ms. Rowlands offers only circumstantial evidence of causation. Circumstantial evidence may include: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." <u>Id.</u> (quoting <u>Bunn v. Khoury Enterprises, Inc.</u>, 753 F.3d 676, 684 (7th Cir. 2014)). Ms. Rowlands argues that similarly situated employees

received better treatment and UPS's stated reason for her discharge was pretextual.[4]

As with her Title VII and ADEA claims, Ms. Rowlands contends that Mr. Gropengieser was similarly situated and received better treatment. But as discussed in detail when addressing those claims, Ms. Rowlands can't show that Mr. Gropengieser was similarly situated with respect to performance, qualifications, and conduct.

Ms. Rowlands also asserts that she presented evidence showing UPS's stated reason for the adverse employment action taken against her were pretextual. "In determining whether an employer's stated reason for discharge is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." Id. "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." Id. (quoting Argyropoulos v. City of Alton, 539 F.3d 724, 736 (7th Cir. 2008)).

Ms. Rowlands contends that UPS administered its policies arbitrarily, singling her out, and subjected her to different standards. She asserts, for

---

[4] Ms. Rowlands doesn't explicitly argue that discriminatory intent can be shown by suspicious timing, but she repeatedly notes that she was disciplined for timecard fraud about a week before her knee surgery. Ms. Rowlands hasn't fully developed a suspicious timing argument and "[b]y itself, temporal proximity would not normally create an issue of material fact as to causation." Buie v. Quad/Graphics, Inc., 366 F.3d 496, 506 (7th Cir. 2004).

example, that she was prohibited from taking breaks with coworkers, moving her car in the parking lot, and bringing her purse to her workstation while coworkers brought bags and coolers to work. These arguments provide context, but don't directly address the issue of pretext. The concern in the pretext inquiry isn't whether UPS was unfair or too hard on Ms. Rowlands; "the only question is whether the employer's proffered reason [for the adverse job action] was . . . a lie." Harper v. C.R. England, Inc., 687 F.3d 297, 311 (7th Cir. 2012) (quoting Ineichen v. Ameritech, 410 F.3d 956, 961 (7th Cir.2005)).

Ms. Rowlands argues that UPS couldn't have honestly believed that Mr. Gropengieser, a 37 year-old body builder, felt threatened by Ms. Rowlands. But this was the basis for her January 2013 termination, not the July 2012 suspension, and so is irrelevant on this issue. With respect to the July 2012 suspension, Ms. Rowlands doesn't deny having altered timecard or point to any other non-management employee who committed timecard fraud and wasn't terminated. UPS produced uncontested evidence that two men younger than Ms. Rowlands were fired in 2014 and 2015 for improperly reporting or altering work times.

Ms. Rowlands hasn't offered other evidence that would "show that the legitimate nondiscriminatory reason offered by [UPS] . . . was a lie or a sham to cover up discriminatory motives." She can't demonstrate that the July 2012 suspension was pretextual. Monroe v. Indiana Dep't of Transportation, __ F.3d __, No. 16-1959, 2017 WL 4103750, at *6 (7th Cir. 2017).

## 2.  January 2013 Termination

With respect to the January 2013 termination, the court must first consider whether Ms. Rowlands was disabled when UPS terminated her. Ms. Rowlands maintains that her knee injury substantially limited her ability to perform the major life activities of walking, standing, squatting, knelling, and working even after her meniscal tear was repaired in July 2012 and she was authorized to return to work. Ms. Rowlands cites statements in her affidavit, in which she attests, among other things, that: "[her] knee interfered with [her] ability to climb into vehicles, exercise, enjoy recreation, and pick up objects", and that "[she] also had problems and difficulty with walking, standing, squatting and kneeling [and] could not climb stairs very well."

The medical evidence in the record contradicts Ms. Rowlands's claims that her knee still substantially limited her in January 2013. Her torn meniscus was surgically repaired in July 2012. While her orthopedist, Dr. Harris, indicated that she was briefly disabled while recovering from surgery, he estimated that disability period would end a month after surgery, at the end of August 2012. By September 2012, Dr. Harris opined that she could "return to work with no restrictions" and didn't suggest her knee substantially limited her in any way.

Based on the evidence in the record, no reasonable jury could find that Ms. Rowlands had an impairment that substantially limit her ability to perform

a major life activity as compared to most people in the general population when UPS terminated her in January 2013 and, therefore, she wasn't disabled.[5]

Based on the foregoing, UPS is entitled to summary judgment on Ms. Rowlands "substantially limiting impairment" disability discrimination claims.

## C. ADA "Regarded as" Disabled Claim

Ms. Rowlands argues that UPS discriminated against her by regarding her as disabled and wrongfully discharging her in July 2012 and January 2013 because of her actual or perceived impairment. *See* 42 U.S.C. § 12102(1)(C) (including being regarded as having a physical or mental impairment that substantially limits one or more major life activities as part of the definition of "disability"). "The 'regarded as' prong of the ADA's disability definition is intended to provide a remedy for discrimination based on misperceptions about the abilities of impaired persons." Krocka v. City of Chicago, 203 F.3d 507, 513–514 (7th Cir. 2000). To proceed under the "regarded as" prong, Ms. Rowlands must establish that she was "subjected to a prohibited action because of an actual or

---

[5] Ms. Rowlands doesn't argue that she met the definition of disability for purposes of her January 2013 termination because she had a record of a disability. *See* 42 U.S.C.A. § 12102(1) ("[t]he term 'disability' means, with respect to an individual--(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment"). She argued only that she met the definition under either the "substantially limiting impairment" or "regarded as" prongs. [*See* Doc. No. 58 at 3–4 (describing the three prongs under which a plaintiff can claim disability and stating "Rowlands argues both that she suffered from a physical impairment that substantially limits her in her life activities and that UPS regarded her as having an impairment")].

perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." 29 C.F.R. § 1630.2(l)(1).

Ms. Rowlands contends that UPS regarded her as disabled because she had "been off of work for extended periods of time in 2005, 2008-2009, 2011 and 2012," wore a knee brace when she returned to work in September 2012, and regularly elevated and iced her knee at work. She also notes that she discussed her impairment with Mr. Liskey on multiple occasions, including her interest in icing her knee, elevating her leg, and using a bathroom on the floor where her work station was located to avoid stairs. These assertions allow an inference that UPS knew Ms. Rowlands's knee was injured, but not that UPS regarded her as disabled.

Ms. Rowlands points to two pieces of evidence to demonstrate that UPS wasn't only aware of her injury, but also regarded her as disabled and fired her for her disability: her testimony that she told Mr. Liskey that UPS terminated her in July 2012 because she was disabled, not for timecard fraud, and Mr. Harms's testimony that UPS terminated her because of her physical condition. As for Ms. Rowlands's testimony, she stated in her deposition that she told Mr. Liskey that UPS disciplined her in July 2012 because she was disabled, but her assertion as to UPS's motive isn't a fact and her speculations about UPS's motives can't resist summary judgment. *See* <u>Springer v. Durflinger</u>, 518 F.3d 479, 484 (7th Cir. 2008) (a plaintiff's "hunch about the defendant's motives" can't defeat a

summary judgment motion). When she was asked what evidence she had to support her claim that UPS had a discriminatory motive in firing her, she testified that "one week before I had surgery, I got fired. . . I mean, doesn't that sound like a coincidence to you?" [Doc. No. 58-2 at 319]. Pointing to coincidental timing is insufficient to defeat UPS's summary judgment motion because "[b]y itself, temporal proximity would not normally create an issue of material fact as to causation." Buie v. Quad/Graphics, Inc., 366 F.3d 496, 506 (7th Cir. 2004).

Mr. Harms's testimony also doesn't demonstrate that UPS disciplined Ms. Rowlands because it regarded her as disabled. Mr. Harms testified that he believed UPS was trying to get rid of Ms. Rowlands because of her physical condition. When asked why he believed that, he testified that: "I think all of the things came together. You know, I think everything—I mean, I believe that they thought . . . this person, she is hurt quite often. She is . . . costing us money" [Doc. No. 58-3 at 93–94]. He offered no facts that could allow a reasonable jury to conclude that UPS disciplined Ms. Rowlands because it regarded her as disabled and his speculation about UPS's motives can't defeat summary judgment. *See* Visser v. Packer Eng'g Assocs., Inc., 924 F.2d 655, 659 (7th Cir. 1991) ("[d]iscrimination law would be unmanageable if disgruntled employees— the friends of the plaintiff and often people in the same legal position as the plaintiff—could defeat summary judgment by affidavits speculating about the defendant's motives").

UPS is entitled to summary judgment on Ms. Rowlands "regarded as" disability discrimination claims.

*D. ADA Reasonable Accommodation Claim*

Ms. Rowlands next argues that UPS didn't reasonably accommodate her disability after she notified them of her condition. She contends that this claim survives because UPS didn't address it in its summary judgment motion, waiving any argument with respect to that claim. UPS argues its motion didn't address a failure to accommodate claim because neither the amended complaint nor the EEOC charge incorporated into the complaint stated such a claim.

Ms. Rowlands acknowledges that the amended complaint itself doesn't allege a failure to accommodate, but she contends that the EEOC charge attached to, and therefore incorporated into, the complaint properly states a failure to accommodate claim. The court disagrees. The relevant portion of the EEOC charge states that: "Complainant tried to engage in the interactive process and tried to get reasonable accommodations (such as wearing her knee brace, eliminating the existence of a long cord which [she] ultimately tripped over causing more serious injuries to her knee)", and that "she was retaliated against for having engaged in protected conduct—filing previous Charges of Discrimination and trying to engage in the interactive process/making requests for reasonable accommodations."

While Ms. Rowlands's EEOC charge alleges she sought reasonable accommodations, neither her complaint nor her EEOC charge allege UPS denied her request. Accordingly, her failure to accommodate claim was waived and UPS is entitled to summary judgment on that claim. *See* Hooper v. Proctor Health Care Inc., 804 F.3d 846, 851 (7th Cir. 2015) (holding that a failure to accommodate claim was waived where the complaint didn't include sufficient facts to put the defendant on notice of a failure to accommodate claim).

## *E. ADA Retaliation Claim*[6]

Ms. Rowlands asserts that UPS retaliated against her because she sought reasonable accommodations for her knee impairment. Under the ADA, "[e]mployers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless." Dickerson v. Board of Trustees of Community College Dist. No. 522, 657 F.3d 595, 602 (7th Cir. 2011). Ms. Rowlands attempts to prove retaliation under the burden-shifting method, which requires her to make a *prima facie* showing that: (1) she "engaged in statutorily protected activity"; (2) she "was performing [her] job satisfactorily"; and (3) she "was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did

---

[6] In her response to the summary judgment motion, Ms. Rowlands agreed to dismiss with prejudice any claim of retaliation based on her having previously filed EEOC charges.

not suffer." <u>Preddie v. Bartholomew Consol. Sch. Corp.</u>, 799 F.3d 806, 814 (7th Cir. 2015) (quoting <u>Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522</u>, 657 F.3d 595, 601–602 (7th Cir. 2011)).

Like her Title VII, ADEA, and other ADA claims, Ms. Rowlands's retaliation claim fails because she hasn't identified a similarly situated employee who was treated more favorably. As already discussed, Ms. Rowlands can't met her burden to demonstrate that Mr. Gropengieser—or any other coworker—"engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." <u>Monroe v. Indiana Dep't of Transportation</u>, __ F.3d __, No. 16-1959, 2017 WL 4103750, at *7 (7th Cir. 2017).

Because Ms. Rowlands can't establish a *prima facie* case, UPS is entitled to summary judgment on her ADA retaliation claim.


IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Doc. No. 50] is GRANTED. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:   October 5, 2017


_____/s/ Robert L. Miller, Jr.
Judge
United States District Court
21